MORAN et al., Appellants, v. PULLMAN PALACE CAR COMPANY et al.

Division Two, June 16, 1896.

134  641
152  183
134  641
82a  16
134  641
157  634
d85a  63

1. **Municipal Corporations:** DUTY OF LOT OWNER TO FILL AND FENCE EXCAVATIONS: ORDINANCE. Ordinances requiring depressions and excavations within a city which are below the natural or artificial grades of the surrounding or adjacent streets to be filled or fenced, and prescribing penalties for failure to comply with their requirements, apply only to places in such close proximity to the highway as to endanger the travelers thereon.

2. ———: ORDINANCE: CIVIL LIABILITY: PENALTY. A municipal ordinance can not create a civil liability against a person violating it and in favor of persons injured by its violation. The only liability attaching to the infraction of such an ordinance is the penalty it imposes.

3. ———: ———: FILLING DEPRESSIONS AND EXCAVATIONS. A municipal corporation is not liable for injuries to persons resulting from a failure to enforce ordinances requiring depressions and excavations adjacent to streets to be filled or fenced.

4. ———: ———: ———. A municipal ordinance requiring persons making, or · causing to be made, excavations in or adjoining any street, alley, or public place to fence them does not apply to one who purchases property with excavations already upon it.

5. **Land, Duty of Owner to Fence**: TRESPASSER: INJURY: DAMAGES. The owner of a lot in a city who failed to fence the same is not liable in damages for the death of a boy who entered upon the premises, without invitation or permission, and was drowned while bathing in a pond on the lot.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*John P. Leahy* and *L. Frank Ottofy* for appellants.

(1) The owner of property having thereon any dangerous agency, which is either attractive to children or where he has knowledge that they resort to it for amusement, or otherwise, and he fails to use ordinary care, under the circumstances, to guard the same against injury to them, he must respond in damages for such neglect, irrespective of the fact that the danger is not adjacent to the highway. *Schmidt v. Dist. Co.*, 90 Mo. 284; *Pekin v. McMahon*, 154 Ill. 141; *Leeright v. Ahrens,* 60 Mo. App. 118; *Fink v. Furnace Co.*, 10 Mo. App. 61–67, and cases cited, 73; *Dwyer v. Railroad,* 12 Mo. App. 597; *Malloy v. Savings and Loan Association*, 21 Pac. Rep. (Cal.) 525; *Mackey v. Vicksburg*, 64 Miss. 777; *Branson's Adm'r v. Labrot,* 81 Ky. 638; *Powers v. Harlow*, 53 Mich. 507; *Hydraulic Works Co. v. Orr*, 83 Pa. St. 332; *Whirley v. Whiteman*, 1 Head (Tenn.), 610; *Coppner v. Pennsylvania Co.*, 12 Ill. App. 600; *Penso v. McCormick*, 125 Ind. 116; *Railroad v. McDonald*, 152 U. S. 262; *Schmidt v. Cook*, 23 N. Y. Supp. 799; *Brinkley Car Works v. Cooper*, 31 S. W. Rep. (Ark.) 154; *Ilwaco, etc., v. Hedrick*, 1 Wash. St. 446; *Barthold v. Philadelphia*, 154

Pa. St. 109; *Railroad v. Measles*, 81 Tex. 474. (2) It is not necessary to prove knowledge in defendant that children resorted to the place; it is bound to take notice of the habits of children. *Franke v. City*, 110 Mo. 516; *Dwyer v. Railroad*, 12 Mo. App. 597; *Fink v. Mo. Fur. Co.*, 10 Mo. App. 61. (3) And the question whether the owner was exercising ordinary care under the circumstances is for the jury. *Koons v. Railroad*, 65 Mo. 592; *Nagel v. Railroad*, 75 Mo. 653; *Brinkley v. Cooper*, 31 S. W. Rep. 154; *Barthold v. Philadelphia*, 155 Pa. St. 109. (4) It is an element of negligence whether or not the place could be inclosed or fenced. *Overholt v. Vieths*, 93 Mo. 422; *Rushenberg v. Railroad*, 109 Mo. 112. (5) It was competent to show that other children had fallen into the pond; the court should have admitted this testimony. *Golden v. Clinton*, 54 Mo. App. 100; 36 Central Law Journal, p. 335 and cases cited; *Railroad v. Measles*, 81 Tex. 474. (6) The court erred in excluding sections 619 and 620 of the ordinances of the city of St. Louis; they require owners to fence property that is adjacent to streets and below the natural or artificial grades thereof and the failure to comply with such ordinances is negligence. *Pekin v. McMahon*, 154 Ill. 141; *Keim v. R. & T. Co.*, 90 Mo. 314; *Gass v. Railroad*, 57 Mo. App. 574; *Eads v. Gains*, 58 Mo. App. 586.

*Dickson & Smith* for respondent, Pullman Palace Car Company.

(1) An owner of land is under no obligation to one trespassing thereon, even though an infant, to place guards around an excavation or pond wholly within such land and not immediately adjacent to a public highway. *Overholt v. Vieths*, 93 Mo. 422; *Witte v. Stifel*, 126 Mo. 295; *Barney v. Railroad*, 126

Mo. 372; *Richards v. Connell*, 63 N. W. Rep. (Neb.) 915; *Ratte v. Dawson*, 52 N. W. Rep. (Minn.) 965; *Klix v. Nieman*, 68 Wis. 272; *Hargreaves v. Deacon*, 25 Mich. 1; *Charlebois v. Railroad*, 91 Mich. 59; *Murphy v. Brooklyn*, 118 N. Y. 575; *Sterger v. Van Sicklen*, 132 N. Y. 499; *Beck v. Carter*, 68 N. Y. 283; *Robertson v. Mayor*, 28 N. Y. Sup. 13; *Green v. Linton*, 27 N. Y. Sup. 892; *Clark v. Manchester*, 62 N. H. 577; *Frost v. Railroad*, 9 Atl. Rep. (N. H.) 790; *Gillespie v. McGowan*, 100 Pa. St. 144; *O'Connor v. Railroad*, 44 La. Ann. 39; *Benson v. Baltimore Tr. Co.*, 26 Atl. Rep. (Md.) 985; *Mergenthaler v. Kirby*, 28 Atl. Rep. (Md.,) 1065; *Maenner v. Carroll*, 46 Md. 213; *McGinniss v. Butler*, 34 N. E. Rep. (Mass.) 259; *Stevens v. Nichols*, 29 N. E. Rep. (Mass.) 1150; *Galligan v. Mfg. Co.*, 10 N. E. Rep. (Mass.) 171; *Daniels v. Railroad*, 154 Mass. 349; *McEachern v. Railroad*, 150 Mass. 515; *Clark v. Richmond*, 83 Va. 355; Addison on Torts, secs. 621, 622; Bigelow on Torts, 699; Cooley on Torts, 606. (2) The ordinances offered in evidence relate only to the duty of a landowner to guard excavations, etc., upon his land so near a public highway as to be dangerous under ordinary circumstances to persons properly using such highway, and were rightly rejected. *Eisenberg v. Railroad*, 33 Mo. App. 85; *Overholt v. Vieths*, 93 Mo. 422; *Clark v. Richmond*, 83 Va. 355.

*W. C. Marshall* for respondent, city of St. Louis.

(1) The circuit court properly excluded sections 619, 620, and 621, chapter 15, article 4, Revised Ordinances St. Louis, 1887. These ordinance provisions are merely police regulations which the city has power to adopt, but the city can not be made liable for damages resulting from a failure to enforce them. 15 Am. and Eng.

Encyclopedia of Law, p. 1154, and cases cited in note 3.
(2) The circuit court properly gave the instructions
for a nonsuit as to the city of St. Louis. A municipality
is not bound to provide guards or railings where the
excavation to be guarded against is not immediately
adjacent to the highway, but such a distance from it
that the municipality can not reasonably be expected
to guard against it. *Nebraska City v. Campbell*, 2 Black
(U. S.) 560; *Adams v. Natick*, 13 Allen (Mass.), 529;
*Warren v. Holyoke*, 112 Mass. 362; *Sparhawk v. Salem*,
1 Allen (Mass.), 30; *Murphy v. Gloucester*, 105 Mass.
470; *Puffer v. Orange*, 122 Mass. 389; *Lansing v. Toolan*,
37 Mich. 152; *Chicago v. Gallagher*, 44 Ill. 295; *Young
v. District of Columbia*, 3 McArthur (D. C.), 137; *Mon-
mouth v. Sullivan*, 8 Ill. App. 50; *Daily v. Worcester*,
131 Mass. 452; *Goodin v. Des Moines*, 55 Iowa, 67;
*Duffy v. Dubuque*, 63 Iowa, 171. The city is not bound
to erect barriers to prevent travelers from straying from
a highway, although there is a dangerous place twenty-
eight feet from the highway which they may reach by
so straying. *Daily v. Worcester*, 131 Mass. 452. A
traveler driving with a horse and wagon was precipi-
tated over an embankment which was thirty-four feet
from the traveled part of the highway and which was
not separated therefrom by a railing: *Held*, that he
could not recover damages from the town. *Barnes v.
Inhabitants*, 138 Mass. 67. "A dangerous place twenty-
five feet from the highway, clearly would not be in such
dangerous proximity as to make traveling on it unsafe."
*Murphy v. Gloucester*, 105 Mass. 470. Consult *Hubbell
v. Yonkers*, 104 N. Y. 434; The case of *Overholt v. Vieths*,
93 Mo. 422, is conclusive of the case at bar.

SHERWOOD, J.—The subjoined plat shows the
locality and surroundings of the accident which con-

stitutes the basis of the present action for damages caused by the drowning of plaintiffs' son in a pond.

Bernard street on the north, Montrose avenue on the east, Scott avenue on the south, and Cardinal avenue on the west are the boundary lines of a square of ground

owned by the Pullman Car Company. Within that square of ground is located a pond caused by excavations in quarrying rock there. There are no houses in the immediate neighborhood except as indicated on the plat, in the northwest corner of Bernard street and Montrose avenue, and on that avenue. With the exception of Montrose avenue, none of the streets in the vicinity have any existence, save *on paper*, there being nothing to indicate where they are, and westward from Montrose avenue, for more than half a mile, the country is an open prairie, crossed at will by foot passengers, travelers on horse back or in vehicles.

Along the entire front of the property thus bounded, that is to say, on the west line of the sidewalk on the west side of Montrose avenue, extended a perpendicular bank of earth, somthing like six feet high, so perpendicular as to require two foot boards at the base to keep the earth from falling on the sidewalk.

The pond shown by the diagram begins some twenty feet west of the west line of Montrose avenue, still further away from the south edge of the block of ground in question, that is, on Scott avenue; a less distance from the north side of the block on Bernard street, and some twenty-five feet east of the east line of Cardinal avenue.

The pond is quite shallow, not exceeding, it seems, some three feet deep in most places, and sloping gradually toward the Cardinal avenue side. On that side it begins quite shallow at first, grows deeper until it is about three feet deep some ten or fifteen feet from the shore, when there is a sudden depression making the water some fifteen feet deep. This sudden depression, however, where the water is of that depth, is, it seems, quite circumscribed in area as indicated by the plat.

For a number of years, boys in the vicinity and neighborhood of the pond had been accustomed at all

hours during the day to bathing in it. Policemen would occasionally drive them away. Of evenings men also would come to the pond for the purpose of bathing.

In the afternoon of June 15, 1892, between 2 and 3 o'clock, plaintiffs' son, a boy some nine years of age, went in swimming or bathing in the pond and was drowned, his nude body being shortly afterward found in the depression already mentioned, about forty feet from the east line of Cardinal avenue. The boy's parents lived about a mile from the pond and allowed him full liberty to play with other boys on the streets.

The *gravamen* of plaintiffs' action in substance is, that the pond was attractive to children who were accustomed to bathe therein; that it was a dangerous place by reason of the deep hole therein; that defendants knew or might have known of the danger of the place to children, and that they were in the habit of bathing in the pond; that defendants negligently permitted the pond to be frequented by children, to remain unguarded and unfenced; neglected to fill said excavation and to fence the same as required by divers ordinances which were pleaded, and such failure resulted in the death of plaintiffs' son, who, entering the pond where it seemed to be shallow, fell over into the deep portion and was drowned.

The answer of the city was a general denial coupled with a plea of contributory negligence.

The answer of the defendant company was in effect a general denial, coupled with pleas averring that plaintiff's son was, at the time of his injury and death, trespassing on defendant's property and while so trespassing without leave or license, was guilty of such contributory negligence in wading or swimming about in the pond, as directly led to his death.

To these answers, plaintiffs replied.

The ordinances pleaded are as follow:

"*Section 619 of chapter 15, article 4.* All holes, depressions, excavations, or other dangerous places within the city of St. Louis that are below the natural or artificial grades of the surrounding or adjacent streets, shall be filled up so as to prevent persons and animals from falling into them.

"*Section 620 of chapter 15, article 4.* The street commissioner shall notify the owners or occupants of premises on which such dangerous places exist, to cause fences or walls to be built around them, or to cause the same to be filled up, within such period as he shall deem the exigencies of the case may require. In case of failure to comply by any of the owners or occupants of said premises, after the notification above required has been given, then they shall be deemed guilty of a misdemeanor, and, upon conviction thereof, be fined before the police court not less than ten nor exceeding five hundred dollars.

"*Section 621 of chapter 15, article 4.* Whenever the said owner or occupant can not be found then the street commissioner shall cause such dangerous places to be fenced in.

"*Section 622 of chapter 15, article 4.* The expense which the street commissioner may incur in doing the work above mentioned shall be charged to, and paid out of appropriations for streets and alleys."

"*Section 571, article 1, chapter 15.* Every person who shall cause to be made any excavation in or adjoining any public street, alley, highway, or public place, shall cause the same to be fenced in with a substantial fence not less than three feet high, and so placed as to prevent persons, animals or vehicles from falling into said excavations, and every person making or causing to be made any such excavation, and every person who shall occupy or cause to be occupied any portion of any pub-

lic street, alley, highway or public place, with building materials or any obstruction, shall cause one red light to be securely and conspicuously posted on or near such excavation, building material or obstruction; provided such obstruction does not extend more than ten feet in length, and if over ten feet and less than fifty feet, two red lights, one at each end, shall be so placed, and one additional light for each additional fifty feet or part thereof, and shall keep such lights burning during the entire night."

With the exception of the last mentioned section, the ordinances were rejected as to both defendants when offered in evidence.

At the close of the evidence, the court of its own motion, gave instructions in the nature of demurrers to the evidence, and plaintiffs took a nonsuit, etc.

1.   The ordinances which were rejected, were properly rejected, and this for several reasons.   In the first place such ordinances only apply to cases where the owner's property extends up to the highway and the excavation or depression is in such close proximity to that highway as to endanger the safety of travelers *as travelers* on such thoroughfare; and not otherwise. *Eisenberg v. Railroad*, 33 Mo. App. 85; *Overholt v. Vieths*, 93 Mo. 422; *Clark v. Richmond*, 83 Va. 355; *Barney v. Railroad*, 126 Mo. 372; 2 Dillon, Mun. Corp. [4 Ed.], sec. 1005.

In the second place, a municipal ordinance can not create a civil liability against a person violating it and in favor of persons injured by its violation, for this is a power which belongs alone to the sovereign power of the state.   The only liability which attaches to the infraction of such an ordinance is the penalty it imposes.   *Heeney v. Sprague*, 11 R. I. 456; *Philadelphia, etc., R. R. Co. v. Ervin*, 89 Pa. St. 71; *Vandyke v. Cincinnati*, 1 Disney, 532; *Kirby v. Boylston Ass'n.*,

14 Gray, 249; *Flynn v. Canton Co., etc.,* 40 Md. 312; *Fath v. Railroad,* 105 Mo. 537.

In the third place, a city is not liable for damages resulting from a failure to enforce such police regulations as are the ordinances in question. 15 Am. and Eng. Encyclopedia of Law, 1154, and note 3, and cases cited.

2.  The last quoted ordinance is also objectionable for like reasons as before stated, and also for the additional reason, so far as concerns defendant company, that there is no evidence tending to show that it caused to be made the excavation. And the ordinance does not apply in any event to one who has bought property with an excavation already upon it.

3.  The views expressed in *Overholt v. Vieths,* 93 Mo. 422, are applicable to the case at bar, and are not rendered inapplicable by the fact that in the former case the child entered onto the premises where he was drowned, through adjoining private property. The same principle applies whether the unauthorized entry be made on private grounds, with private grounds as a medium of reaching the locality where the injury occurs, as applies where a public street is used for a like purpose. *Overholt's* case has been recently and approvingly cited and followed in the quite recent cases of *Witte v. Stifel,* 126 Mo. 295, and *Barney v. Railroad,* 126 Mo. 372.

Having fully discussed, in those cases, the subject here involved, it is needless to go over the same ground again. Abundant authorities in addition to those just mentioned, have been collected by the industry of counsel, which fully maintained the same views as those already announced.

The case of *Richards v. Connell,* 63 N. W. Rep. 915, was decided last year by the supreme court of Nebraska. The facts in that case are almost identical

with those of this case. The action there, as here, was against the city (of Omaha) and the owners of certain uninclosed lots of ground. The petition there alleged that defendants had for a long time prior to the death by drowning of a boy about ten years old, permitted the surface water to accumulate on the lots thereby creating a deep and dangerous pond, and that defendants had failed and neglected to fence the lots or erect any barrier to prevent children lawfully in the vicinity from falling in the pond; that the lots were in the vicinity of a public school, and adjacent to a street, and in a public place much frequented, and were attractive to children of tender years, who were accustomed to play about and upon the water. The boy was playing upon a raft floating on the water, and fell in and was drowned. A demurrer to the petition was sustained by the lower court.

The court say: "The petition, we think, fails to state a cause of action against the defendants, and that the demurrers were rightly sustained. The single question presented by the record is whether the owner of a vacant lot, upon which is situated a pond of water or a dangerous excavation, is required to fence it, or otherwise insure the safety of strangers, old or young, who may go upon said premises, not by his invitation, express or implied, but for the purpose of amusement, or from motives of curiosity." This case also approvingly cites and follows *Overholt's* case, and distinguishes the case then in hand from what are commonly known as the "turn-table cases." To the like effect see: *Ratte v. Dawson*, 52 N. W. Rep. 965; *Charlebois v. Railroad*, 91 Mich. 59; *Murphy v. Brooklyn*, 118 N. Y. 575; *Sterger v. Van Sicklen*, 132 N. Y. 499; *Greene v. Linton*, 27 N. Y. Supp. 892; *Clark v. Manchester*, 62 N. H. 577; *Frost v. Railroad*, 9 Atl. Rep. 790; *O'Connor v. Railroad*, 44 La. Ann. 339; *Benson v. Baltimore*,

*etc., Co.*, 26 Atl. Rep. 973; *Mergenthaler v. Kirby*, 28 Atl. Rep. 1065; *McGuiness v. Butler*, 34 N. E. Rep. 259; *Clark v. Richmond*, 83 Va. 355, and other cases.

For these reasons we affirm the judgment. All concur.