# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1913.

SALLIE THOMPSON *v.* ILLINOIS CENTRAL R. Co.

[63 South. 185.]

1. NEGLIGENCE. *Dangerous condition of premises. Ponds. Demurrer.*

In a suit for damages by a parent against a railroad company for the death of a nine-year-old child, who was drowned, a demurrer was properly sustained to a declaration which alleged that the defendant railroad company in the conduct of its business purchased one hundred acres of woodland a half mile from the residential portion of a town, and by building a dam across the natural drainage of this land impounded the water therein, forming thereby a lake, that the boy who was drowned with other boys was in the habit of wading in this pond, which fact was known to the agents of the railroad company or would have been known, had the company placed a watchman over its unenclosed lake, that the boy waded about two hundred and fifty feet in the water and stepped into a "deep hole" in the original drainage ditch or branch and was drowned.

2. SAME.

In such case the pond or lake although artificially created, was in nowise different from natural ponds and streams which exist everywhere and which involves the same dangers and present the same appearance and the same attractions to children and under such circumstances no negligence can be imputed to the railroad in failing to fence the pond or to station a watchman to guard it.

105 Miss.] (636)

Appeal from the circuit court of Pike county.

Hon. D. M. Miller, Judge.

Suit by Sallie Thompson against the Illinois Central Railroad Company. From a judgment sustaining a demurrer to plaintiff's declaration she appeals.

The facts are fully stated in the opinion of the court.

*Whitfield & McNeill,* for appellant.

We respectfully submit that nothing is necessary to secure a reversal of this judgment, except to fully apprehend the facts. What might become of the case, as it develops, by showing the facts in a trial before a jury, we are not now concerned with. What we press home on the court now, is that no demurrer such as this, admitting these facts, can, by any possibility, be sustained in principle or law.

The court is familiar with the doctrine of the turntable cases. Those cases all proceed upon the principle that all persons are bound to take knowledge of the habits and instincts of children, and that no proof of their habits or instincts is required. The jury know, as all other persons know, such habits and instincts; this is expressly adjudged in *Spengler* v. *Williams,* 6 So. Rep., page 614, at the bottom of the page, the court saying, through Cooper, J.:

"All persons are supposed to know the curiosity of children and their disposition to play around and about objects of unusual appearance. No court would permit a verdict to stand which rested upon the denial of such instincts in children, or excused the negligence of the defendant because of the want of specific evidence that he possessed that common knowledge which all men are assumed to have." To the same effect is *Temple* v. *Electric Light Company,* 89 Miss. 7.

But besides this, the demurrer in this case admits that the children were attracted to this lake and that defendant knew it. The principle of the turntable cases then

proceeds along this line; that a turntable is such an object as does attract children and that, although a child may be a technical trespasser, and said turntable be located on the defendant's land, yet, in view of the immaturity of the child, because of the fact that it is a child, it shall not be treated as an adult trespasser would be, but that the defendant will nevertheless be liable, for the reason that it is negligence in the defendant, as to children, to leave a turntable unguarded. *Kansas Central Railway Company* v. *Fitzsimmons*, 31 Am. Rep. 203; *Keffe* v. *Milwaukee Railway Company*, 18 Am. Rep. 393; *Evansich* v. *Gulf Railroad*, 44 Am. Rep. 586. In *Gulf, etc., Ry. Co.* v. *Styron*, 1 S. W. 161; *Fort Worth, etc., Ry. Co.* v. *Robertson*, 14 L. R. A. 81; *Bond* v. *City Railroad Co.*, 49 Am. St. Rep. 412; *Bridger* v. *Ashley Railroad Company*, 27 S. C. 476; *Mackey* v. *Vicksburg*, 2 So. 180; *Hydraulic Works Co.* v. *Orr*, 83 Pa. St. 332; *Keffe* v. *Railroad Co.*, 21 Minn. 207; *Railroad Co.* v. *Stout*, 17 Wall, 657; *Spengler* v. *Williams*, 6 So. 613; *City of Pekin* v. *Patrick McHon* (Ill. Sup. Ct.), 27 L. R. A. 206; such are *Mackey* v. *Vicksburg*, 64 Miss. 777; *Bond* v. *Shreveport Railroad Co.*, 49 Am. St. Rep. 406-433; *Brinkley Car Company* v. *Cooper*, 60 Ark. 545 and *Mackey* v. *Vicksburg*, 64 Miss. 777; *Powers* v. *Harlon*, 53 Mich. 507.

We conclude our citation of cases with one which we most earnestly commend to the court, *Price* v. *Atchison Water Company*, 62 Am. St. Rep. 625. We call the court's attention to the fact that, in this case, the minor boy was about eleven years of age and was shown to be a bright, intelligent boy. He was drowned in one of the reservoirs of the defendant company.

The statement, not borne out at all by the authorities cited in Cyc., vol. 296, 464, that the weight of authority is against liability in this class of cases where excavations or ponds or reservoirs, etc., are involved, is, we submit, not accurate as to the weight of authorities; but

what we especially and most earnestly emphasize for the
court is, that Mississippi is squarely and irrevocably com-
mitted to the sounder and more humane view that the
principle of the turntable cases applies to any object or
situation attractive to children by reason of their child-
ish curiosity or instincts, wherever the defendant has not
exercised due care in guarding against injury to chil-
dren.   The very cases we have cited, the three in our
brief above, are cases, first, of an excavation; second, of
a pile of lumber; and third, of a spreading oak tree, dan-
gerous and attractive to boys; and the courts through-
out the country have cases as I have stated the Mackey
case squarely aligning our court with those courts, an-
nouncing the true view.   If we had no precedent, I should,
as I say, entertain not the slightest doubt that this court,
as at present constituted, would announce the doctrine
of the Mackey case, and the Spengler case, and the Tem-
ple case, as the true law, because reason and humanity
enforce that view.

But I want, in conclusion, to call the court's attention
to the fact that we are not trying a case which the defend-
ant won before a jury, but we are trying a case in which
his demurrer admits every proposition necessary to re-
covery, to be true.   All these questions of fact, to wit:
First, whether the parent, the mother, had been guilty of
such contributory negligence as would bar her; and sec-
ond, whether this child, not nine years old, was of suffi-
cient degree and maturity of intelligence to have con-
tributory negligence applied to him, if it existed; and,
third, whether the lake was in fact attractive to the chil-
dren; and, fourth, whether the defendant knew or ought
to have known that it was so; and fifth, whether defend-
ant knew, or with the exercise of ordinary care, should
have known that children bathed and waded in said lake;
and sixth, whether the public path was near the lake and
that children, and the public generally, used that path
daily, with the knowledge and consent of the defendant;

and seventh, whether the bathing and wading in said water of said lake was done daily with the permission and with the knowledge and consent of the defendant, each and all of these facts, every one of which is averred to have existed in the declaration, and admitted to have existed, by the demurrer, should, of course, have been submitted to a jury as questions of fact, and not determined by the court on demurrer.

"The question of defendant's care is for the jury." At page 414 about midway the page, he says again, quoting from Sheatmen & Redfield on Negligence, vol. 107, sec. 99: "It is not necessary that the defendant should actually know of the danger to which plaintiff is exposed. It is enough if he has sufficient notice or belief to put a prudent man on the alert, if he does not take such precautions as a prudent man would take under similar notice or belief, he is liable."

And Mr. Freeman adds immediately: "And this doctrine has been applied to cases of injury to children."

And this declaration, let me again say, avers specifically that the defendant was negligent; that it took no care; that he gave no warning; published no notice, and guarded, in no way, against the danger, although knowing that this child, and other children, had been in the habit of daily wading and swimming in this lake; and that, too, with the full knowledge and consent of the said defendant.

We refer without quotations, to the following other authorities: *Hydraulic Works Co.* v. *Orr,* 83 Pa. St. 332, adopted and approved by Cooper, J.: *Mackey* v. *Vicksburg,* 2 So. 180; *Young* v. *Harny,* 16 Ind. 314; *Lepwick* v. *Gaddis,* 26 L. R. A. 686; *Kansas Cent. Ry. Co.* v. *Fitzsimmons,* 31 Am. Rep. 203.

Having, now, analyzed the declaration and the demurrer and shown, first, that the mere reading of this declaration ought certainly to secure the reversal of this judgment; and having in the second place, carefully analyzed

the authorities showing what the turntable doctrine is, that is, what the principle is, underlying the turntable cases, and that that principle has been adopted in this state, and applied by this supreme court, properly to any and all objects attractive to children, whether excavations, ponds or lakes, piles of lumber, or attractive small oak trees, we do submit, with the utmost confidence, that this court should promptly reverse the judgment of the court below, and overrule the demurrer; that this case may be tried in the full light of all the facts, and not be shunted off upon a demurrer unadvisedly taken, admitting facts which could not be admitted with any possibility of having such demurrer sustained.

*Mayes & Mayes,* for appellee.

The one striking feature about the brief of appellant is that none of the latest adjudications on this interesting topic are considered therein. Whether counsel was investigating in the American State Reports, or in the L. R. A., that investigation seems to have stopped short about twenty years ago, and does not extend to, or include the later adjudications, including the Vermont case of the year 1911, in which the courts have reached a conclusion precisely the opposite of that for which appellant contends. That case is *Bottum* v. *Hawks* (decided in 1911), 35 L. R. A., New Series, page 440.

"To keep within the established principles of the common law, the question of liability in cases of this kind should be made to turn on the presence or absence of an invitation on the part of the owner. A naked trespasser or bare licensee enters for purposes of his own; he acts for his own benefit or convenience; and the owner gains nothing. But, if invited, one enters not alone from motives of his own, uncontributed to by the act of the owner, but is induced, in some measure, by the conduct of the latter. The owner, in contemplation of law, gains something from the arrangement, though his advantage need

not be a pecuniary one. The invitation carries with it some measure of assurance of safety, which the owner must make good by the exercise of active care, if necessary. Without an invitation, express or implied, no duty of active care arises. Such invitation is implied whenever one makes such use of another's premises or something found thereon as the owner intends he shall, or such as he is reasonably justified in understanding the owner intended. *Sweeny* v. *Old Colony & N. R. Co.*, 10 Allen, 368, 87 Am. Dec. 644; *Turess* v. *N. Y., S. & W. R. Co.*, 61 N. J. L., 314, 40 Atl. 614.

"Neither silence, acquiescence, nor permission, however, standing alone, is sufficient to establish an invitation. A license may thus be created, but not an invitation. The infancy of the party injured does not change the situation. He enters as a trespasser, licensee, or invited person, according to the same circumstances which control in the case of an adult.

"When the question of his contributory negligence arises, his age, intelligence and want of experience are to be considered; and, when the owner's duty toward him is established, these factors must be taken account of in determining whether the owner's conduct measures up to the legal standard. That invitation is necessary to the establishment of a duty of active care in cases of this class is, as we have seen, recognized in the Keffe case, which, it is generally admitted, contains the strongest presentation of the arguments in support of the doctrine under discussion. Such cases (wrongly, we think) find such invitation in the attractiveness of the object causing the injury."

The latest case cited by appellants from the American State Reports, is *Barnes* v. *R. R. Co.*, page 400, decided in 1895, annotated by Mr. Freeman, and appellant's counsel say that "we commend this note as covering completely the whole ground here involved." We hardly understand that commendation. As we read the note, on

page 423, that part of it which bears in this special topic
of "injury to child occasioned by . . . pools of water,
and other like agencies . . ." the note sustains the
judgment of the court below in this case, and does not
militate against it.

But even if the note were otherwise, and did not sus-
tain appellant, we cite the court to the still later case of
*Wheeling, etc., R. Co.* v. *Harvey*, and of *Swartz* v. *Akron
Water Works Co.*, 122 Am. St. Rep. 503-522.

The case of *Keffe* v. *Milwaukee Ry. Co.*, 21 Minn. 207,
cited and relied on by appellant, was one of the earliest
state cases in support of the turntable doctrine, and is
generally admitted to contain the strongest presentation
of the arguments in support of it; but even in that case
it is recognized that an invitation is necessary to the es-
tablishment of a duty of active care in cases of this class.
It is therefore interesting and instructive to turn to the
later case of *Stendal* v. *Boyd*, 42 L. R. A. 288, decided in
1898, in which the supreme court of Minnesota itself
speaks of the Keffe case and those following in time.
A child four years and ten months old was drowned in a
pool. The court said:   "The rule that if a landowner
makes a dangerous excavation on his land adjoining a
street or highway, into which a person rightfully in the
street falls, the owner is liable, has no application to this
case. It is sought, however, to hold the defendant liable
upon the facts stated upon the principle of the 'Turn-
table Cases.' *Keffe* v. *Milwaukee & St. P. R. Co.*, 21
Minn. 207, 18 Am. Rep. 393; *O'Malley* v. *St. Paul, M. &
M. R. Co.*, 43 Minn. 289. The liability of a landowner
to children who are induced to come upon his premises
by reason of attractive and dangerous machinery there-
on was carefully limited in the original decision, and the
limitations have been enforced by the subsequent deci-
sions of this court. In the case of *Twist* v. *Winona & St.
P. R. Co.*, 39 Minn. 233; *Ratt* v. *Dawson*, 50 Minn. 450,
and the opinion on the former appeal in this case, 67

Minn. 279; *Peters* v. *Bowman,* 115 Cal. 345, 355, 7 Am. and Eng. Ency. Law (2 Ed.), pp. 403, 404.

"The tendency of the more recent decisions seems to be in favor of the doctrine last mentioned, and we are of opinion that, upon principle, it is the stronger side of the question."

See, also, *Moran* v. *Pullman Car Co.,* 134 Mo. 541; *Dobbins* v. *Missouri, etc., R. Co.,* 91 Tex. 60; *Richards* v. *Connell,* 45 Neb. 467; *Peters* v. *Bowman,* 115 Cal. 345.

These are all cited in the *Vermont case, supra*; they are to the same effect. See, also, *Salladt* v. *Mining Co.,* 12 Ariz. 124; *Indianapolis Water Co.* v. *Harold,* 170 Ind. 170; *Bloom* v. *Weatherford,* 121 La. 248; *Scroggins* v. *Cement Co.,* 60 So. (Ala.) 175, 178. Mark elaborate notes to cases in 19 L. R. A., New Series, 1094.

In their brief counsel for appellant insist that this court "is squarely and irrevocably committed to the sounder and more humane view that the principle of the turntable cases applies to any object or situation attractive to children by reason of their childish curiosity or instincts, wherever the defendant has not exercised due care in guarding against injury to children." To support this assertion of square and irrevocable committal of this court, etc., counsel rely on *Mackey* v. *Vicksburg,* 64 Miss. 777; *Spengler* v. *Williams,* 67 Miss. 1; and on *Temple* v. *Electric Light Co.,* 89 Miss. 1. None of these cases establishes any such doctrine.

In *Mackey* v. *Vicksburg, supra,* on page 783, the court, in express terms, disclaims any consideration of the question whether any liability would have rested upon the defendant if nothing further had been alleged than that it cut a precipice upon a part of Sky Hill, and that plaintiff went upon the hill, fell therefrom, and was injured. Thus the court expressly disavows applying the principle of the turntable cases to "any object," etc. And what the court did do was to decide about a case which itself states thus:

"It is averred in the declaration, and the demurrer admits it to be true, that the defendant deposited the dirt cut from the hill upon the rear of the plaintiff's lot, by means whereof he was enabled and invited to escape from his enclosure and to go upon the precipitous and dangerous path cut along the hill and leading from the place of escape to the point of danger from which he fell. Under these circumstances we think a question of fact is presented which ought to be submitted to the jury."

Thus it will be seen that the city had actually invaded the residence lot of the child, and had made a continuous causeway leading to the path, and up the hill; and so had invited this particular child, who there lived, to wander along it.

In *Spengler* v. *Williams, supra,* the question was not considered or alluded to. The defendant was there charged with piling lumber in a public street, in an irregular, unsafe and dangerous manner, which lumber fell on the child by reason of the careless and negligent manner in which it had been piled. The declaration alleged that defendant knew that the lumber pile in the street was calculated to attract children. On the trial there was no evidence of this knowledge; and on appeal the only question passed on by this court was, that such proof was not necessary; that such attractiveness to children was common knowledge, and that both the court and the jury would know it without proof.

This case, so far from telling for the appellant, is a square decision against her on the point of practice, insofar as the necessity of submitting to any jury the question of children's habits in playing about, is concerned.

In *Temple* v. *Electric Light Co.,* 89 Miss. 1, the question was not involved or alluded to. The declaration showed that defendant had "negligently removed the insulation from its wires at a place where they passed through the limbs of a tree which had numerous

branches;" that this was in the public street, and was a menace to human life. The defendant sought to avoid liability for such admitted negligence about this specially dangerous appliance overhanging a public street, by claiming that the appliance was strung where persons were not likely to come in contact with it, and that defendant had no reason to know that people would climb the tree and get in reach of it. What the company was held for, was, not for planting or arranging the tree, which attracted the child; but for negligently removing the insulation from its overhanging wires. It does not touch the case at bar, in any point.

In conclusion, we deem it hardly necessary to make any response to the assertion contained in the brief for appellant, for it is nothing more than an assertion, that the view for which they contend is "the sounder and more humane view." This is not a discussion of humanics, but of law. The safe and proper thing for this court to do is, not to search about to find anything but what the law is. If the law needs changing, that, as is stated in several of the opinions stated above, is the function of the legislature.

Cook, J., delivered the opinion of the court.

Appellant in her declaration states, in June, 1911, the appellee railroad company constructed a dam, which formed a pond or lake of water, covering something like one hundred acres of land, in the woods adjoining its main line, in the northern suburbs of the city of McComb, and a half mile from the residence portion of the city; that there had been a branch or ditch running through the land covered by the lake, and that defendant caused deep and dangerous holes to be left in the said branch by the backing up of the water in the branch or ditch bed; that the lake so formed was uninclosed, and was open and without warning or trespass signs. It is further charged, prior to the time said lake was

formed, Meredith Thompson, the infant child of plaintiff, nine years of age, customarily passed along a public pathway on the said lake or pond; that after the lake was formed it was the custom of children to wade in the lake, and that this was permitted by the agents of the appellee; and that the railroad could have seen children wading in the lake daily, had they kept a watchman at the lake. On July 20, 1912, the boy, "Meredith Thompson, who walked along the said pathway by said pond or lake with other children, and was attracted to and impliedly invited to said pond or lake, and with other children waded in said pond or lake, and into one of said dangerous holes, was drowned." A demurrer was interposed to this declaration, and sustained by the trial court, and this appeal challenges the correctness of the judgment sustaining the demurrer.

A map of the *locus in quo* is filed with the declaration, and from this map we gather that the lake or pond covered an area of about eighty acres, and that the water line followed the irregular meander line of the natural elevations of the land. The branch or ditch winds along over this territory, following a general course from southwest to northeast. The pathway mentioned in the declaration does not appear upon the map, and it is impossible for us to tell how far the boy strayed from the water's edge to the point where he was drowned; but, assuming that the boy entered the pond at a point nearest to the place where he was drowned, he must have waded at least two hundred and fifty feet from the edge of the water in order to reach the "deep hole" where he was drowned. It is stated in the declaration that the place where the boy was drowned is about five hundred yards from the railroad line, and the map shows this estimate of distance to be about right.

From the map and the averments of the declaration the state of case the court is called upon to decide is about this: The appellee, a railroad company, in the conduct

of its business purchased one hundred acres of woodland a half mile from the residential portion of the city of McComb, and by building a dam across the natural drainage of this land they impounded the water therein, forming thereby the lake in question. The nine-year-old son of appellant and other boys were in the habit of wading in this pond, which fact was known to the agents of appellee, or would have been known, had appellee placed a watchman over this uninclosed lake.     On July 20, 1912, the boy waded at least two hundred and fifty feet in the water, stepped into a ''deep hole'' in the original drainage ditch or branch, and was drowned.

It is contended that the pond as maintained was dangerous and attractive to children, and that the law imposed upon appellee the duty to guard same, either by inclosing it with a fence or wall, or by providing a watchman to warn children of the hidden dangers, and to prevent them from wading in the pond, and, having failed to do either of these things, the railroad company is liable in damages to the mother of the boy, nine years of age, who came to his death by reason of the company's negligence.     To support this view of the law the following cases decided by this court are cited, viz.: *Mackey* v. *Vicksburg,* 64 Miss. 777, 2 South. 178; *Spengler* v. *Williams,* 67 Miss. 1, 6 South. 613; *Temple* v. *Electric Light Co.,* 89 Miss. 1, 42 South. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924.

The court's opinion in Mackey v. Vicksburg is as follows: ''It is averred in the declaration, and the demurrer admits it to be true, that the defendant deposited the dirt cut from the hill upon the rear of the plaintiff's lot, by means whereof he was enabled and invited to escape from his inclosure and to go upon the precipitous and dangerous path cut along the hill, and leading from the place of escape to the point of danger from which he fell.'' As we construe this case, the declaration averred that the city constructed a pathway onto and leading from the

home of the six-year-old plaintiff to a precipitous emi-
nence seventy-five feet high, from which plaintiff fell and
was injured, the court saying: "If the defendant by the
exercise of reasonable forethought could have anticipated
the probability of the child's action, it should have
guarded against the danger by removing the earth or ob-
structing the pathway."

In Spengler v. Williams the sole and only point sub-
mitted to the court by the briefs of counsel was the fail-
ure of the plaintiff to establish by specific proof "that
the defendant knew that piling lumber in the street would
attract children, or in fact that it was calculated to en-
tice them to play around it," and all the court said was
addressed to that point.    However, we think the court
did decide that the jury was entirely justified in deciding
without specific proof that the defendant by the exercise
of reasonable forethought should have reasonably antici-
pated that the lumber pile would probably have attracted
children; and this is undoubtedly true.

Coming now to Temple v. Electric Light Company: In
this case the declaration averred that "the defendant, in
transmitting electricity, which it knew to be a danger-
ous agency, through a thickly settled part of McComb
city, negligently removed the insulation from its wires
at a place where they passed through the limbs of a tree,
which had numerous branches extending almost to the
ground, and in which plaintiff and other children played,
and that by reason of the removal of the insulation from
the wires they thereby became dangerous, while, if prop-
erly insulated, they would have been harmless, and that
plaintiff, being ignorant of their dangerous condition,
while climbing among the branches of the tree, came in
contact with an uninsulated wire and received the in-
juries of which complaint is made.    The defendant de-
murred to the declaration, because it failed to aver (1)
that defendant had reason to believe that the wires were
constructed in such place and manner as to result in in-

jury to plaintiff or anyone else; (2) that it was through the fault of defendant that plaintiff was injured, but, on the other hand, the declaration shows that it was through the fault of plaintiff that the accident occurred.'' It will be noted that the court in this case was dealing with a case involving negligence in the handling of one of the deadliest agencies—electricity—and the crux of the decision may be found in the last crisp and forceful sentence of the opinion, viz.: ''This court, so far as the exertion of its power in a legitimate way is concerned, intends to exert that power so as to secure, at the hands of these public utility corporations, handling and controlling these extraordinarily dangerous agencies, the very highest degree of skill and care.''

The decision in this case meets with our entire approval, and the rule therein announced need not be confined to ''public utility corporations,'' but is applicable to all handling ''these extraordinarily dangerous agencies.'' We think it clear that the three cases decided by this court are all sound in principle, and it may be, as contended by appellant, that they commit this court to the doctrine announced in the turntable cases. Independent of authority, we believe these cases are based on the principles of simple justice, and that they will appeal to the common sense of all intelligent thinkers. In each of the cases the injury might have been reasonably anticipated as probable, and the court only required the defendants to take reasonable precautions, which would have prevented the injuries complained of, and compliance with the precautions would have been entirely feasible.

In the instant case there was no enticing of appellant from his very dooryard, and providing for him a continuous pathway to the obviously dangerous place, as in the Mackey case; nor was there any use of the public thoroughfare of a populous city for the setting of an inviting and manifestly dangerous trap for children at a place where they were accustomed to go, and where the

very natural and probable result followed the careless in-
difference of the defendant, as in the Spengler case.
Again, we have no case involving the careless handling of
electricity in the streets of a city at a place where the
instincts of a natural and healthy boy would carry him,
as was the case in the Temple case.

Here we have a generally shallow body of water cov-
ering a large area in the woods, a half mile from the
inhabited parts of the town, wherein boys waded, and
wherein appellant's boy was drowned. We think it must
be conceded that this deplorable tragedy could not have
been anticipated as probable by the exercise of reasona-
ble forethought, nor could it have been prevented by any
reasonable precautions. Of course, one could have an-
ticipated the possibility of this sad event; but we think
the danger was comparatively remote. Scattered over
the length and breadth of the land are innumerable ponds
and lakes, artificial and natural; and occasionally a boy
or man loses his life while wading, or bathing, in such
body of water. If, as a matter of law, the owners of fish
ponds, mill ponds, gin ponds, and other artificial bodies,
wherein it is possible that boys may be drowned, can be
held guilty of actionable negligence unless they inclose or
guard same, few will be able to maintain these utilities,
and to our minds an intolerable condition will be created.

In the case of *Peters* v. *Bowman*, 115 Cal. 345, 355, 47
Pac. 598, 599 (56 Am. St. Rep. 106), which was one where
a boy had been drowned in an unguarded pond on private
property, the court, in holding the owner not liable, stated
the distinction in these words: "A turntable is not only
a danger specially created by the act of the owner, but
it is a danger of a different kind to those which exist in
the order of nature. A pond, although artificially
created, is in nowise different from those natural ponds
and streams which exist everywhere, and which involve
the same dangers and present the same appearance and
the same attractions to children. A turntable can be ren-

dered absolutely safe, without destroying or materially impairing its usefulness, by simply locking it. A pond cannot be rendered inaccessible to boys by any ordinary means. Certainly no ordinary fence around the lot upon which a pond is situated would answer the purpose; and therefore, to make it safe, it must either be filled or drained, or, in other words, destroyed.''

With the exception of the excerpt from the opinion in the California case, we have confined ourselves to the decisions of our own court, and do not think it necessary or adviasble to discuss the conflicting decisions of other courts upon questions similar to the one under review. We do not recede from the principle announced by this court in *Dampf* v. *Y. & M. V. R. R. Co.,* 95 Miss. 85, 48 South. 612; but the law arises out of the facts of each case, and under the averments of the declaration in the instant case, we are of opinion that no negligence can be imputed to appellee.

*Affirmed.*