## MARUSKA et al. v. MISSOURI, K. & T. R. CO. OF TEXAS. (No. 7267.)

Court of Civil Appeals of Texas. Austin.
Oct. 10, 1928.

Rehearing Denied Oct. 31, 1928.

J. F. Taulbee, of Georgetown, and Winbourn Pearce, of Temple, for appellants.

Wilcox & Graves, of Georgetown, for appellee.

BAUGH, J. This was a suit for damages for the death by drowning of appellant's seven year old son in appellee's artificial lake near Granger, Tex., constructed by appellee to provide water for its engines, boilers, etc. At the close of the evidence the trial court instructed a verdict for the railroad company, hence this appeal.

The lake in question was formed by the construction of the railroad dump across a ravine. It was filled from springs augmented by surface water. There was evidence indicating a maximum width of the lake near the railroad of 500 feet and a length of from a half to three-quarters of a mile. The railroad company owned only its right of way with its fences extending on the line thereof across the waters of the lake, and leased from the owner, J. J. Parmele, the other land covered by the water. Parmele's fence extended around the lake, was set back from the water's edge a short distance, and joined the right of way fence of the railroad company on each side of the lake. Between the city limits of Granger and said lake was a cotton yard, privately owned, 600 feet wide. This was on the south side of the lake. On the south side of this cotton yard was a street on which were numerous residences. This street was the nearest highway to said lake on that side. To the west and north of the lake were farms. On the east, across the railroad, was a highway.

On the occasion in question, appellants' son, and his companion of approximately the same age, crossed the cotton yard, climbed through Parmele's fence, and went to the lake, to catch crawfish. In play, each threw the other's hat in the lake. Deceased's hat blew across to the north side. He went down to the railroad right of way, climbed through or over its fence, followed the track to the north side of the lake, climbed back through the right of way fence into Parmele's inclosure, waded out into the water, recovered his hat, and in spite of warnings, from his companion and a Mexican who was present, not to do so, waded farther out into the lake, and was drowned.'

Appellants urge actionable negligence against the railroad company in two respects: (a) In constructing and keeping a very large, extraordinary, and unusual lake immediately adjoining the town of Granger, within a few hundred feet of a thickly populated portion of said town, and adjoining the common playground for numerous children; (b) in failing to build, provide, and keep in proper repair a fence, safeguard, or other obstruction which would prevent children in the vicinity, who were attracted by the lake, from going into it.

■ Liability in this case is predicated upon the rules laid down in what is commonly known as the "turntable cases," that is, the doctrine of "attractive nuisances." Appellants cite only three cases. Ry. Co. v. Morgan, 92 Tex. 98, 46 S. W. 28; Oil Mill v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111, and McCoy v. T. P. & L. Co. (Tex. Com. App.) 239 S. W. 1108. Expressions occur in these cases which, if their facts be ignored, might be construed to sustain appellants' contention. But it is a cardinal rule of construction that decisions are to be construed in the light of the facts on which they are based. Each of these cases involved hidden dangers, in the instrument inflicting the injury, not apparent to those who were injured.

■ A different rule prevails as to natural objects and forces, such as lakes, rivers, trees, etc. Their characteristics and dangers are the common knowledge of all, obvious even to children. And though attractive to children, even of tender years, the owner thereof is not generally required even to fence such premises in order to prevent injury to trespassers. In the instant case, though it was shown that children frequently and continually came to this lake to catch crawfish and to play, Mr. Parmele testified that it was a fish and game preserve, that he kept warning signs around the lake, and that he kept the fences in such state of repair as to inclose his sheep, horses, cattle, etc.

212

The size of the lake, in our opinion, is not material. The dangers of a small lake, where deep enough to drown a child, are the same as those of a large one, and the same lure to the child is present in one as in the other. Indeed, the cases disclose that most of such suits have arisen from deaths in pools or small lakes. Apparently the added size of a lake is an added warning both to children and parents.

The general rule in such cases as the one before us is announced in 20 R. C. L. § 85, p. 97, as follows:

"Ponds, pools, lakes, streams, and other waters embody perils that are deemed to be obvious to children of the tenderest years; and as a general proposition no liability attaches to the proprietor by reason of death resulting therefrom to children who have come upon the land to bathe, skate or play. * * * Although, a property owner may know of the habit of children to visit waters upon his premises, he is as a rule under no obligation to erect barriers or take other measures to prevent them being injured thereby."

In Dobbins v. M., K. & T. R. Co., 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856, a suit for damages for the death of a child from drowning in a pool on the railway company's right of way, the Supreme Court say:

"As a police measure the law-making power may and doubtless should, without unduly interfering with or burdening private ownership of land, compel the inclosure of pools, etc., situated on private property in such close proximity to thickly settled places as to be unusually attractive and dangerous, and impose criminal and civil liability, or both, for failure to comply with the requirements of such law. When such a duty is imposed the courts may properly enforce it or allow damages for its breach, but not before."

See, also, 29 Cyc. 464; Ry. Co. v. Edwards, 90 Tex. 65, 36 S. W. 430, 32 L. R. A. 825; Moran v. Pullman Palace Car Co., 134 Mo. 641, 36 S. W. 659, 33 L. R. A. 755, 56 Am. St. Rep. 543; Thompson v. Ry. Co., 105 Miss. 636, 63 So. 185, 47 L. R. A. (N. S.) 1101; Eades v. American Cast-Iron Pipe Co., 208 Ala. 556, 94 So. 593. A very extended list of notations, with a full discussion of this question, is found in 36 A. L. R. 224 et seq., perhaps the most exhaustive discussion that we have found. See, also, Davoren v. Kansas City, 308 Mo. 513, 273 S. W. 401, 40 A. L. R. 488.

In practically all cases where recovery has been permitted, one of two conditions existed, neither of which was present in the instant case; that is, there was either some hidden danger in, upon, or over the lake other than the body of water itself; or same was maintained immediately adjacent to or under some highway, public passageway, or place where people had a right to travel. The rule in respect to hidden dangers is tersely stated by the Circuit Court of Appeals in Troglia v. Butte Superior Mining Co., 270 F. 75, as follows:

"The degree of care required of one who maintains on his land an artificial pool for a useful purpose is not greater than that required of one through whose land flows a natural stream, and he is bound to no special care or precaution for the protection of children who are in the habit of swimming in the same, unless there is in the pool some peculiar danger, in the nature of a hidden peril or trap for the unwary, of which he has or ought to have knowledge."

Under the undisputed facts of this case, and the well-settled rules of law as announced in the above-cited cases, we think the trial court properly instructed the jury to find for the defendant. The judgment is therefore affirmed.

Affirmed.

On Appellants' Motion for Rehearing.

In their motion for rehearing appellants in paragraph 6 thereof request the court as follows:

"The appellants move and request the court to make additional statement in the paragraph of the opinion setting forth the negligence urged against the railroad company, showing that, in connection with the negligence set forth in this paragraph, there was an allegation that the defendant *was not making such use of its property as others ordinarily do and that the defendant was not making such use of its property as owners of property use in their ordinary businesses in the way in which men of prudence are accustomed to use them for the reasons specified in such petition.*"

Their pleadings contain substantially the allegation as above requested, and we so find, and in this respect appellants' motion is granted. In all other respects it is overruled.

Granted in part and in part overruled.