## CITY OF ROME *v.* CHENEY.

1. The undisputed evidence being to the effect that the sewer in which the plaintiff's minor son was alleged to have been drowned was properly constructed and was necessary to prevent the streets and private property from being damaged by overflow from heavy rains, and there being no evidence of any negligence on the part of the city or its employees, the verdict against the city was contrary to law and the evidence.
2. A properly constructed drain four feet wide and two feet deep, made for the purpose of carrying off surface-water, is not such a contrivance as would be so inviting to a child nine years old that the city would be liable for his death by drowning, due to his playing in the drain during or just after a very heavy rain.

Argued October 17,—Decided November 9, 1901.

Action for damages. Before Judge Henry. Floyd superior court. April 24, 1901.

*Halsted Smith* and *Alexander & Hillyer*, for plaintiff in error. *Seaborn Wright* and *Dean & Dean*, contra.

LEWIS, J. Mrs. Cheney sued the City of Rome for $25,000 damages on account of the death of her nine-year-old son, upon whom she alleged that she was largely dependent for a support. Her petition set up that the defendant had negligently constructed and permitted to remain in a dangerous condition a large open sewer on the edge of the sidewalk on a named street in the city, which open sewer emptied into a large underground covered sewer leading to the Oostanaula river; that these sewers are and were so constructed that they have great fall, and decline rapidly towards the

river, and in times of heavy rains great volumes of water flow with great rapidity through them to the river, and that at the point where the open sewer enters the underground sewer there is and was a large hole, which the city left with no bars or grating or other means to prevent objects or bodies from being washed into the underground sewer; all of which facts were or should have been known to the defendant. She alleged that on a named day, at a time when a heavy rain was falling or had just fallen, and a large volume of water was in consequence flowing rapidly down the sewers, her minor son, while walking along the streets of the city, fell into the open sewer and was washed through the hole into the underground sewer and drowned. The petition, after setting forth the expectancy and the capacity to labor of the deceased child, prayed for the recovery of the full financial value of his life, as above set out. The answer of the defendant was, in substance, a general denial of negligence and of liability. The case was tried before a jury and a verdict rendered for the plaintiff for $4,750; and the defendant's motion for a new trial being overruled, it excepted. The evidence showed that on the day of his death, just after an unusually heavy rain, when the open sewer referred to in the petition was swollen with a large volume of water, Paul Cheney, the plaintiff's son, was seen wading in the water in the vicinity of the trap, or hole, connecting the surface sewer with the underground sewer. This hole was directly under a plank walk which bridged the open sewer at a street-crossing, and the boy was seen to get down into the water from this plank walk, or bridge, and wade about in the water which filled the gutter. The current of the water was very swift, but not so swift as to prevent him and other children from wading about in the stream. Presumably the plaintiff's son lost his footing and was swept into the open hole connecting with the underground sewer and drowned. There were no eye-witnesses to the occurrence, but the child's body was afterwards found in the Oostanaula river near the mouth of the sewer, and his umbrella was picked up near where he had been seen wading in the water of the open sewer. It was admitted that there were no bars or grating of any sort covering the hole connecting the two sewers. It was shown, however, that the sewers were properly constructed and properly maintained, and were necessary to the preservation of the streets of the city and the private property of

its citizens; and it was also shown that any impediment to the flow of water in the nature of bars or grating over the hole connecting the two sewers would have resulted in the grating becoming clogged with mud, rocks and trash, causing the gutter to overflow in times of heavy rain and do serious damage. It was not contended that the defendant was negligent in the construction or maintenance of the sewer, except in its failure to provide some device to prevent the passing of solid bodies through the hole, or trap, connecting the open with the underground sewer.

1. Under the evidence contained in the record, we do not think that the plaintiff was entitled to a recovery. No negligence whatever was shown to have been committed by the city or any of its employees. The failure to place bars or grating across the top of the trap connecting the open with the underground sewer was explained by the defendant in a manner entirely relieving it from any liability; for it was proved by uncontradicted expert testimony that such a device would have obstructed the flow of the surface-water and caused it to overflow and inflict serious damage to the streets of the city and the property of its citizens. If these witnesses are to be believed, not only was the city not negligent in keeping the sewers thus open and unobstructed, but a failure to do so would have rendered it liable to property-owners who might be damaged by an overflow of water in times of heavy rain. See, on this subject, 10 Am. & Eng. Enc. L. (2d ed.) 246; 2 Dillon, Mun. Corp. (4th ed.) § 980. Certainly the city could not be charged with the duty of guarding against so unusual and unlikely an occurrence as the washing of the body of a child through this trap, or hole. There was, indeed, evidence tending to contradict the plaintiff's theory of the accident, and to show that it was impossible for the child's body to have been washed through the underground sewer as contended. There seems to be grave doubt as to whether the closed sewer was large enough to permit of the passage through it of the body, and the fact that there were few marks or bruises on the body when found in the river gives considerable force to the contention of the defendant that the child was not drowned in the sewer but immediately in the river. But conceding, for the sake of the argument, the correctness of the plaintiff's theory as to the manner in which her son lost his life, we are not prepared to hold that it was the duty of the city to go to the extent of rendering itself liable

to civil actions for damages, in order to exercise the more watchful care over the safety of children who might play in the gutters after a heavy rain, a care which we think devolves more upon parents than upon the city. To entitle the plaintiff to recover in an action of this sort, it must clearly appear that the municipal authorities were guilty of negligence, and that this negligence was the preponderating cause of the injury inflicted. See *Gaskins* v. *Atlanta*, 73 *Ga.* 746; *Columbus* v. *Ogletree*, 96 *Ga.* 178 (3); and many other authorities might be cited to the same effect. As has been stated, the plaintiff in the present case entirely failed to prove that the city had been negligent in any particular, or had violated any duty which it owed to her or her minor son.

2. It appeared that the gutter, or open drain, in which the plaintiff's son was last seen to be playing, and which is alleged to have been partly the cause of his death, was, on the side nearest the sidewalk, about two feet deep. On the other side the bank of the gutter was irregular, and its depth varied somewhat, at no point being more than two feet. Its width was about four feet across the top, and something less in the bottom, owing to the sloping sides of the drain. In no possible view of the case can such a drain or sewer be considered as a device that would be naturally alluring or inviting to children of tender years, in the sense and to the extent that the city would be liable for injuries received by children playing in its waters. We think the true rule upon this subject is to be found in Clarke *v.* Richmond, 83 Va. 355, 5 S. E. 369, a case which in many respects bears a strong analogy to the one now before us. In that case a child six years old, while walking on a stone coping adjacent to the sidewalk, the top of the coping being from fifteen inches to two feet high, fell into an excavation which had been made by the city, receiving injuries for which he brought suit. It was held that this coping was not an enticing structure, within the meaning of the rule which holds persons liable for damages if they neglect suitable barriers around dangerous objects near the streets and sidewalks, likely to allure children to their hurt. In the course of the opinion the court uses the following language, which we think is directly applicable to the case now before us: "The obligation of municipal corporations to erect barriers around areas adjoining or extending into its sidewalks or highways grows out of the duty which rests upon municipal

corporations to maintain their streets and sidewalks in safe condition for those who may be rightfully using them, whether they be grown persons or children; but this duty can not be held to extend to the protection of children against every sudden freak that may possess them." In the present case, as has been seen, the sewer under discussion was necessary to the preservation of the streets of the city, and the private property of its citizens, from damage by overflow of surface-water. From aught that appears in the record, it was skillfully constructed and carefully maintained. It was not shown to have been dangerous in and of itself; and the fact (as appears from the evidence) that children frequently waded about in it when it was full of water, and that no accident had ever happened to them, goes far to disprove the contention that it was an alluring attraction fraught with peril to unwary children. No attempt was made to bring home to the city authorities notice of its alleged dangers, nor was it proved to have been dangerous. The defendant rebutted every presumption of negligence which was raised against it; and we hold that the court below should have granted the motion for a new trial on the grounds that the verdict was contrary to law and the evidence.

*Judgment reversed. All the Justices concurring.*