MARY J. GURLEY, ADMINISTRATRIX, v. SOUTHERN POWER COMPANY AND
G. C. HOWARD.

(Filed 19 December, 1916.)

**1. Negligence—Attractive Nuisances—Reservoirs.**

A tank 30 feet long, 35 feet wide, and 11 feet deep, used by a manufacturing concern on its own premises for a water supply, does not fall within the doctrine of dangerous instrumentalities and attractive nuisances so as to impose on the owner the same degree of care in guarding them against the trespass of children.  •

**2. Same—Master and Servant—Employer and Employee—Principal and Agent—Scope of Employment—Respondeat Superior.**

Where a manufacturing concern has a reservoir on its own premises for its water supply, well guarded by a fence around it and a sign forbidding trespassing, and situated at a substation in charge of an employee, who had been instructed to prohibit boys from bathing there, but the employee, in violation of his instruction, secretly permitted the boys to bathe, making a small charge for bathing suits, and one of the boys is drowned, the doctrine of *respondeat superior* has no application, upon the principle that the acts of the employee were not within the scope of his employment and done against the command of the master; and the refusal of the defendant's special requests for instruction to this effect, with supporting evidence, is reversible error in the action of the intestate's administrator for damages.

**3. Master and Servant—Negligence—Imputed Knowledge—Inspection—Ordinary Care—Requests for Instruction—Appeal and Error.**

Where there is evidence tending to show that an employee at a manufacturing plant permitted boys to bathe in a reservoir used by it for the purpose of a water supply, against his employer's instruction, and in a secret and concealed manner, it is *Held*, in an action against the company for damages for the alleged negligent drowning of the plaintiff's intestate, a boy, that the refusal of defendant's special instruction that the plaintiff would not be fixed with implied knowledge of the conditions if it had used ordinary care in inspection, etc., is reversible error.

**4. Executors and Administrators — Negligence — Wrongful Death — Entire Damages—Parent and Child—Statutes.**

The right of action to recover damages for a wrongful death exists exclusively by statute, and is given only to the administrator, who may recover the entire damage in his action; and the question as to the parent may recover for the negligent killing of a minor child is one between the parent and the administrator. Revisal, secs. 59, 60.

CLARK, C. J., dissents in part.

APPEAL at February Term, 1916, of GUILFORD, from *Cline, J.,* upon these issues:

1. Was the death of the plaintiff's intestate caused by the negligence of the defendants, as alleged in the complaint? Answer: "Yes; both of them."

2. What damage, if any, is plaintiff entitled to recover of defendant?
Answer: "$10,000."

From the judgment rendered, defendants appealed.

*Peacock & Dalton, Brooks, Sapp & Williams for plaintiff.*
*King & Kimball for defendant Howard.*
*Osborne, Cocke & Robinson for defendant Power Company.*

BROWN, J. This is an action by the administratrix of Samuel
Shropshire, a boy of 13 or 14, who was drowned in a tank at a sub-
station of the Southern Power Company at High Point. In this sub-
station there is a reservoir, the walls of which are made of cement,
which tank is 30 feet long, 35 feet wide, and 11 feet deep. The sides
are straight down, very slick, and with moss on them. A wire ran
along the top of the walls of the bank, about 10 inches above it, fas-
tened to iron rods extending out of the cement wall. Another wire
extended from side to side about the center of the tank. This tank
is about 15 feet from the wall of the substation and about that distance
from its nearest door. On the day in question the tank lacked 6 or 8
inches of being full of water.

On Sunday, 30 May, 1915, plaintiff's intestate, together with a
12-year-old boy, went to this substation, passed through the gate, saw
the defendant Howard, who had charge of the premises, paid him 10
cents apiece for their bathing suits, and went into this tank. Bathing
suits were kept at the substation by Howard and furnished all boys
desiring them. They were charged 10 cents each. When the intestate
went in there were eleven or twelve boys then in the pool swimming or
playing in the water.

The defendant power company requested the following instruction:

"If you find from the evidence that when the Southern Power Com-
pany inclosed the pool, through one of its servants, Moser, it directed
Edwards to cease to use the pool as a bathing pool, and thereafter it
was run secretly, in a secret manner as far as the Southern Power
Company was concerned, and unknown to the Southern Power Com-
pany or any of its officers, and purposely concealed from the Southern
Power Company, then I charge you that the Southern Power Company
would not, in any wise, be responsible for the death of the plaintiff's
intestate; and if you should answer the first issues 'Yes,' you will go
further and find, when you come to designate the defendant whose neg-
ligence was the cause of the death of the plaintiff's intestate, 'the
defendant Howard.'" That there is ample evidence to support the
instruction tendered does not seem to be disputed.

This prayer was not given either in words or substance. It is undisputed that Howard was running the pool for himself, and not for the power company, and that he alone received the emoluments. If, as the sixth request required the jury to find, Howard was acting secretly, without the knowledge of the power company and contrary to its instructions, purposely concealing his conduct, then he was not acting as its agent, and the company can only be liable for the tort simply because it owned the pool.

The doctrine of dangerous instrumentalities and attractive nuisances cannot justify the refusal to give the sixth prayer. It is irrelevant to the case for the reason that the pool is neither, and so held by the overwhelming weight of authority.

It is said, 29 Cyc., p. 464, that, "As to pools or reservoirs, the weight of authority is that they are not to be classed with turntables, and the owner of premises on which a pool or reservoir is situated is under no obligation to keep the premises guarded against the trespasses of children." *Thompson v. Ill. Central Ry.,* 105 Miss., 636; *Peters v. Bowman,* 115 Cal., 345; *Stendall v. Boyd,* 73 Minn., 53; *Moran v. Car Co.,* 134 Mo., 641; *Richards v. Connel,* 45 Neb., 467; *Klix v. Nieman,* 68 Wis., 271; *R. R. v. Beaver,* 113 Ga., 398; *Riggle v. Lens,* 71 Or., 125; *McCabe v. Woolen Co.,* 124 Fed., 283, affirmed in 132 Fed., 1006; *Sullivan v. Hidekopper,* 27 App. D. C., 154; *R. R. v. Moore,* (Tex. Civ. App.) 172 S. W., 568; *Emard v. Kimberly,* 159 Wis., 83; *Charvoz v. Salt Lake City,* 42 Utah, 455.

We will not undertake to quote from these decisions. They all deal with the subject under discussion and hold that a pond or reservoir is not a dangerous instrumentality or an attractive nuisance. In almost every case the owner of the premises knew of the custom of boys entering thereon to bathe in the pool or pond, but was held not liable for any mishap. Bathing pools are nothing new or rare. They abound in almost every public park, gymnasium, and Y. M. C. A. building, as well as many country clubs. It is a well known and general custom for boys to swim in millponds and invade the lands of farmers to bathe in their marl pits. Who will contend that the mill owner and farmer is liable for death or injury of the bathers because of such ownership? Millponds, swimming holes, and marl pits are equally as attractive to boys for bathing purposes as this particular reservoir.

The only other ground of liability as to the power company is the doctrine of *respondeat superior.* If the jury had found the facts (all supported by evidence) as set out in the sixth request, the power company should have been acquitted of responsibility. The reservoir in which the intestate of the plaintiff was drowned was built in 1909 as a

necessary part of the substation of the defendant power company. It was properly constructed and was not dangerous when used for the purposes for which it was intended.

In 1911 the power company built a substantial fence around its substation, inclosing the reservoir, and hearing that persons had been swimming in it, instructed its agent in charge of the substation to discontinue this practice and not to permit any one to enter the inclosure. It also caused a notice of "No admittance" to be placed on the gate. The agent at the substation disobeyed these instructions, and in consequence the intestate of the plaintiff lost his life.

It also appears, if the evidence of the defendant is true, that it was not necessary for the officers of the company to visit the station except at regular monthly intervals, and at other times when notified by the man at the station that repairs were needed; so that the man in charge knew at all times when to expect the officers of the company, and he testifies that he purposely deceived the company, that he was permitting boys to swim in the reservoir secretly and against the instructions of the company, and that he hid the bathing suits · and other bathing outfit when officers of the company were expected.

If the jury should accept this evidence (and they alone have the power to pass on its credibility), the defendant power company ought not to be held liable for the negligence of its agent, because it was outside of the scope of his employment. The defendant had the right to have this view presented to the jury, which it endeavored to have done in the prayer for instruction which was denied. This Court said in *Roberts v. R. R.,* 143 N. C., 176: "The test is not whether the act was done while . . . (the servant) was on duty, or engaged in his duties; but was it done within the scope of his employment and in the prosecution and furtherance of the business which it was given him to do?"

In *Bucken v. R. R.,* 157 N. C., 443: "We recognize the well established rule that the master is not responsible for the tort of his servant when done without his authority and not for the purpose of executing his orders or doing his work, but wholly for the servant's own purposes and in pursuit of his private and personal ends."

In *Dover v. Mfg. Co.,* 157 N. C., 324: "In an action for tort, in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority and not for the purpose of executing his orders or doing his work. So that if the servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another, not within the scope of his employment, the master is not liable."

Again: "This doctrine of *respondeat superior,* as it is now established, is a just but a hard rule. The master exercises care in the selection of his servant and retains in his service only such servants as are prudent and trustworthy; the servant in the prosecution of the master's business must of necessity pass beyond his sight and out of his control; and yet the law makes the master liable for the conduct of the servant. The application of this principle without working the greatest injustice to every employer of a servant is made possible only by the limitation established by the courts, that when the servant does an act which is not within the scope of his employment the master is not liable. 'Beyond the scope of his employment the servant is as much a stranger to the master as any third person, and his act in that case cannot be regarded as the act of the master. The rule as it is now established by the later judicial declarations should be strictly held within its defined limits. It is a rule capable of great abuse and much hardship, and the courts should guard against its extension or misapplication.' "

*Linville v. Nissen,* 162 N. C., 95, is also strictly analogous to the present case. The *Chief Justice,* who wrote the opinion for the Court, cited and approved *Bucken's case* and *Dover's case.* He further lays down this very pertinent rule, with ample citation of authority: "The owner of an automobile is not liable for personal injuries caused by it, merely because of his ownership."

In Shearman and Redfield on Neg. (6 Ed.), sec. 173, it is said: "There is nothing in the nature of real property which requires that its owner should be held to a stricter liability than the owner of personal property, and he is not, therefore, responsible for the negligence of persons employed upon his land, any further than he would be if they were employed about his chattels." *Marlowe v. Bland,* 154 N. C., 140; *Jackson v. Tel. Co.,* 139 N. C., 347; *Daniel v. R. R.,* 136 N. C., 517, are cases cited in point. Also, Labatt Master and Servant, sec. 2274.

We can conceive of only one answer to this position, and that is that the prayer is in itself defective in that the idea is excluded that the defendant might have known of the use being made of the reservoir by the exercise of ordinary care, but there is evidence that the use of the pool was *secret and concealed* from the defendant and *unknown* to it (facts embraced in the prayer), and the defendant was nowhere given the benefit of it in any part of the charge.

The defendant power company excepts to the following charge on the last issue as to damages: "The measure of damages is the present value of the net pecuniary worth of the intestate to be ascertained by deducting the cost of his own living and expenditures from the gross income, based upon his life expectancy." This charge was evidently

quoted by the judge from the opinion in *Mendenhall v. R. R.,* 123 N. C., at p. 278, which has been approved often by this Court (see Anno. Ed.), down to *Ward v. R. R.,* 161, at p. 186, and *Massey v. R. R.,* 169 N. C., 245.

The defendants contend that as the plaintiff's intestate was a minor, his parents would be entitled to the results of his labors until he was 21 years of age. Under our statute damages for wrongful death can be recovered only by the administratrix, Revisal, 59, 60; *Killian v. R. R.,* 128 N. C., 261 (see Anno. Ed.). Besides, the plaintiff is his mother. It does not appear that his father is living. But if he were, the plaintiff as administratrix is the only party who can recover, and the question of the father's right to share in the recovery for the prospective wages up to 21 years would be a matter between him and the plaintiff, and is not before us. The question as to who would be entitled to a minor's wages where he survives (*Williams v. R. R.,* 121 N. C., 512) does not arise in an action for wrongful death, where only the administrator can maintain the action. *Killian v. R. R., supra,* where this point was raised and decided.

In *Russell v. Steamboat Co.,* 126 N. C., 967, the Court said: "We see no distinction in the law, nor reason for distinction, between the death of a child and of an adult. The measure of damages is the same; but we frankly admit that the difficulty of its application is greatly increased in the case of an infant. Still the jury must do the best they can, taking into consideration all the circumstances surrounding the life that is lost, and relying upon their common knowledge and common sense to determine the weight and effect of the evidence." The court so charged the jury, and if the Southern Power Company desired more definite or specific instructions it was its duty to ask a special instruction. The charge in regard to measure of damages is in exact accordance with the precedents of this Court.

An action for the recovery of wages of a minor or for injury to him lies in favor of the parent; but if the child dies from the injury the action abates. The only action that lies in such case, in this State, is for wrongful death, as authorized by Revisal 59, and that embraces everything. In such action the value of the life before 21 as well as after 21 years of age is recoverable. No other action lies than this. *Killian v. R. R.,* 128 N. C., 262. In *Davis v. R. R.,* 136 N. C., 115, the subject is again discussed, the Court holding: "An action may be maintained by an administrator for the death of an infant by the wrongful act of another." This case was reviewed and reaffirmed in *Carter v. R. R.,* 138 N. C., 750.

In *Bolick v. R. R.,* 138 N. C., 370, the Court held that even if the action for injuries was brought, yet if it results in death, it abates,

and for wrongful death no action could be maintained except that brought by the administrator, which, of course, covers the entire value of the life that was lost. In *Russell v. Steamboat Co., supra,* the child was only 5 months old; see authorities there cited on p. 968. Whatever may be the rule elsewhere, and it varies greatly in other States, the rule is well settled by our statute and our uniform decisions that there can only be one action brought for wrongful death, and that must be by the administrator and covers the entire value in one action.

The motion to nonsuit made by the Southern Power Company was properly denied. The defendant Howard, so far as the record discloses, made no such motion, took no exceptions, and assigned no errors. As to him the judgment is affirmed. As to the Southern Power Company, there must be a

New trial.

CLARK, C. J., dissenting in part: There was evidence that H. L. Alderman, division superintendent of the Southern Power Company, made regular trips to this station once a month, and that he knew that the boys were in the habit of swimming at this pool. The witness Burns testified that he had told Alderman not to allow the boys to go in swimming there, as it was dangerous. When the intestate was drowned Howard was for some reason absent from the building, and the intestate was not missed until he returned and, seeing the clothes on the floor, asked whose they were. He then went to the corner and got a pole with an iron hook and, finding the body, fished it out. He testified that the boys had been in the habit of going into this pool for some three years before the intestate was drowned.

If the plaintiff's allegations are correct, the defendants were joint tort-feasors, and at her election she could sue them jointly or severally. *Staton v. R. R.,* 144 N. C., 135. The defendant power company excepted to the refusal of the nonsuit. But the defendant Howard did not make such motion.

It would seem clear that for the defendant Howard to permit a boy of that age to go into the pool 11 feet deep while he absented himself and when there was no precaution to prevent drowning would make out at least a prima facie case against the defendant Howard. The question raised by the motion of the other defendant is as to whether it was liable for the default of its agent in charge of the tank. The size and nature of the tank were as stated. There is evidence that the boys had been permitted to go there for bathing purposes from three to five years, to the knowledge of the company. Whether or not the 10 cents paid by each went into the treasury of the company or was permitted to be received by Howard in part compensation for his

services does not appear.  But it was a most dangerous instrumentality for boys which the power company permitted the boys to use upon payment of a small fee and without taking care or oversight to prevent fatalities such as this.  There was at least an implied invitation on the part of the power company to go upon the premises, and it is responsible for the loss of life due to its want of care and oversight. *Starling v. Cotton Mills,* 168 N. C., 229.

In *Peking v. McMahon,* (Ill.) 27 L. R. A., 206, the Court sustained a verdict and judgment for the death of a child in a pond in a populous city in which the children were in the habit of playing, but which was partially inclosed from the streets, on the ground that such unguarded premises was a dangerous attraction, and the owners were responsible by reason of the implied invitation to children.  But here there was an express invitation, and an acceptance of compensation, whether it went to the owner or to its agent in part compensation for his services, and the owner is responsible for the negligence in that there were no safeguards against accident of this kind.

In this case the substation of the power company was situated in a populous neighborhood and it maintained thereon a dangerous pond of water within 60 feet of a public street, which was attractive to children, to which place they had been going for nearly five years prior to the death of this boy.  The power company is much more liable than if it had merely permitted an attractive but dangerous locality to remain at that point without being protected by walls.  It had through its custodian and representative permitted children to go there, paying for the privilege, with no sufficient protection against drowning, even if the custodian had been on hand, and in his absence there was no protection whatever.

Numerous authorities can be cited to sustain recoveries in cases of this kind, even where there was no invitation, no compensation paid, but merely unguarded premises.  Under these circumstances there was ample authority to sustain the liability of the defendant power company.

It was in evidence that the plaintiff's intestate could not swim.  No reasonably careful, prudent man would permit a boy to go into a tank of this kind 11 feet deep with numerous other boys without some protection by boats or floats, or otherwise; and without the oversight and presence of some man to guard against accident.  The boy, who could not swim, clung to the side of the tank, as his body was found close to where he went in.  It seems that the other boys were so engrossed in their sport that they did not know when the plaintiff's intestate sank. · It was negligence *per se,* if indeed it was not criminal, for the defendant power company to let the tank be used by the boys without

supervision or safeguard, as it had done for years, and it is responsible for the negligence of its agent Howard, even if they had shown, which they did not, that he had been instructed to remain on hand to guard against accidents, and render help if needed. The evidence shows that the power company was aware that the pool was being thus used, and it must, or should, have known that there were no safety appliances nor any method of resuscitation in case of drowning. The boy dropped out of sight beneath 11 feet of water and no one knew it. The defendants had received his 10 cents and they took no further care or interest. They had been paid.

The defendant urges that it was error for the court to refuse the following prayer for instruction: "If you find from the evidence that when the Southern Power Company inclosed the pool, through one of its servants, Moser, it directed Edwards to cease to use the pool as a bathing pool, and thereafter it was done secretly, in a secret manner, as far as the Southern Power Company was concerned, and unknown to the Southern Power Company or any of its officers, and purposely concealed from the Southern Power Company, then I charge you that the Southern Power Company would not in any wise be responsible for the death of the plaintiff's intestate." This instruction eliminated the implied authority which is recognzed by the law and undertook to confine the jury to the evidence offered to show that the power company authorized the defendant Howard to use the pool upon its premises as alleged in the complaint.

This is contrary to the well settled and necessary principles of law that when a dangerous agency of this kind, located on one of the principal streets of the town, is openly and notoriously used, as is shown by the fact that a large number of boys habitually went there, the responsibility is necessarily upon the owner of the property, who put it in the power of Howard to use it, and by no oversight or supervision took care to ascertain and prevent it. The mere fact, if true, that the company forbade Edwards thus to use it is no excuse or exoneration. Howard was in sole charge of the property, and so far as it was concerned he was the *alter ego* of the corporation. It confided the building to his charge and during the long period that it was used as a dangerous instrumentality it took no care to see that its orders were executed, if it gave such orders. This was the negligence of the company. It sent a man there once a month, and with proper supervision he should have known, if he did not, what the whole town knew, that this dangerous instrumentality was habitually used as a bathing pool. If this supervisor did not ascertain that fact, his negligence was the negligence of the company.

This is not the case where a single act of an employee is done against the orders of the company. Here there was a long course of dealing by a man who was in sole charge of the property, and the company was negligent in not seeing that its orders were obeyed, if they were given. It was negligent in that its supervisor who visited the property once a month did not discover that its other subordinate was using the property in a manner dangerous to the safety of the children in the community. If the corporation is not responsible for the long continued misconduct of the servant in sole charge of the property, and if, further, it is not responsible for the neglect of its supervisor in visiting the property to discover and suppress the notorious disobedience of its orders, then all that is necessary to protect a corporation is to give orders not to do a certain act and leave them to be disobeyed, thus putting the responsibility upon the irresponsible servant and exempting the owner of the property which caused the injury or death. The company cannot obtain immunity by merely giving orders. It must see that they are obeyed. A railroad company instructs its engineers to run on a certain schedule. If they disobey these instructions the company is responsible for any collision that may occur, though the act was done against its orders. Its responsibility to the public is not negatived because its servants disobeyed its orders. In this case Howard was in charge of the building in which this dangerous pool was situated. He was acting within the scope of his employment while in control of the building under his charge, and none the less so because he disobeyed the instructions given him in regard thereto. The supervisor visited the building once a month, and his negligence in not ascertaining the disobedience of orders by Howard, if there were such orders, is none the less the negligence of the company, for in the scope of his employment he was negligent in not ascertaining and stopping the misuse of the building, which was a matter of public notoriety.

Any other doctrine would deprive the public of protection against the dangerous use of railroad engines, pools, or other dangerous agencies by the simple fact that the employee in charge had been told not to use it in a certain manner, though he is left to disobey these orders notoriously for a long period of time, causing such injuries as the wrongful death of the boy on this occasion. These principles are elementary, and, if not maintained, the public would be at the mercy of powerful instrumentalities of danger left in the unsupervised control of subordinates, if it can be shown they were told to be careful.

I concur in affirming the judgment as to Howard, and in sustaining the refusal to nonsuit in favor of the Southern Power Company, and the ruling as to the measure of damages, but dissent as to granting a new trial to the Southern Power Company.