This action is brought to recover for the negligent killing of the plaintiff's intestate, A. B. Rivenbark, on 29 October, 1918. The evidence, taken in its most favorable light for the plaintiff, tends to prove the following facts:
The defendant, Atlantic Coast Line Railroad Company, has a roundhouse and shops in Wilmington, and in the round house there are tracks upon which engines may be overhauled. Near each of these tracks, upon pillars extending from the ground to the roof, there are iron pipes containing compressed air and operated by valves about four feet from the ground. There is an air hose to be used at each of these pillars so arranged that it may be attached by screw to the pipe on the pillar, with a nozzle at the end, to which may be connected hammers or riveters or ordinary nozzles for blowing air. These rubber hose are usually locked up during the night, but, in the morning, when the operatives are about to begin work, they are taken out and laid around near the pipes, but disconnected. When they are to be used, they are taken up and attached to the pipe at the pillar by screwing, and the valve is turned and they are ready for use; and the usual rule is that when an operative finishes a piece of work he turns the valve, shutting off the air, disconnects the hose, and drops it at a place where it can be conveniently gotten when it is necessary to use again. This hose is used by mechanics and their helpers for various purposes, such as driving hammers, boring holes, riveting, blowing dust out of engines, cleaning cars, and so forth, and it was a regular habit of the employees, who had been working in and around engines, tenders, tanks, etc., and became dusty, to clean themselves by blowing themselves off just after quitting work.
Plaintiff's intestate was a well grown and intelligent lad fifteen years of age, and had been at work at and around this roundhouse, where the workmen were constantly using this compressed air hose. John Walton, a full grown colored man, was a helper, assisting boiler makers in their *Page 242 
work. It was his duty to get out the hose and attach it to the pipe ready for use. It was the habit of the employees at noon to clean themselves up by the use of the air hose before going to dinner. On this occasion the colored man, Walton, who had frequently used the air hose for blowing himself off, came out of a tank, where he had been working with witness, Franks, Rivenbark, and others, and took the hose from the ground, where it had been in use a short while before, and took it to the pipe and attachedit, and proceeded to blow the dust from his clothes. After Walton had finished blowing himself off, the boy, Rivenbark, stepped across the pit and said, "John, blow me off." John said, "All right," and proceeded to do it, and after he had finished blowing him off in the front, Rivenbark turned, and Walton blew him off in the back, and, just before he finished, he caught Rivenbark and held the nozzle between his legs, and the air entered his body. Rivenbark hollered. "John, you have killed me." He was taken to the hospital and died shortly thereafter.
We are of opinion that the motion for nonsuit was properly allowed. It is well settled that where a servant commits a wrongful act against a third person, the master is liable for the act if it is committed in the scope and course of the servant's employment, and in furtherance of the master's interests, not otherwise. This general principle has been fully discussed and applied in a number of cases by this Court. Jackson v. Tel. Co.,139 N.C. 347; Pearce v. R. R., 124 N.C. 83; Sawyer v. R. R., 142 N.C. 7;Roberts v. R. R., 143 N.C. 179, and many other cases cited in the notes to those cases. In the Jackson case, Mr. Justice Walker says: "A servant is acting in the course of his employment when he is engaged in that which he was employed to do, and is at the time about his master's business. He is not acting in the course of his employment if he is engaged in some pursuit of his own." In the Roberts case, Mr. Justice Hoke says: "The test is not whether the act was done while Bradley was on duty or engaged in his duties; but was it done within the scope of his employment, and in the prosecution and furtherance of the business which was given him to do?" InMott v. Ice Co., 73 N.Y. 543, cited in the Roberts case, it is said: "For the acts of a servant in the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interests, the latter is responsible, whether the act be done negligently, wantonly, or even willfully. The quality of the act does not excuse. But if the employee, without regard to his service, or to accomplish some purpose of his own, act maliciously or wantonly, the employer is not responsible."
Applying these principles to the admitted facts, it seems clear that the defendants are not liable for the acts of Walton. He was not acting *Page 243 
for defendants nor within the scope of his employment. He had quit work to go to dinner, and was blowing off the dust from his clothing as was usual among the employees. The boy, Rivenbark, was familiar with this process and asked Walton to blow the dust off his clothes. Walton did this, and when the boy turned his back Walton forcibly seized him and wantonly and recklessly blew the air through the boy's rectum into his body and killed him. Upon these facts Walton was guilty of manslaughter, and had he not died, doubtless he would have been punished for it. In no view can he be said to have been acting within the scope of his employment or in the service of the defendant. The case differs very materially from Robinson v.Mfg. Co., 165 N.C. 495. In that case it is held that where the master negligently left a dangerous appliance under conditions likely to inflict an injury on his employee while engaged in the master's work, and consequently another employee is injured who has not been instructed as to its dangerous character, the master is responsible in damages. In that case a boy of 14 was employed as a "doffer" in the cotton mill at Cherryville, N.C. At night, on 8 May, 1913, while engaged in doffing, he stooped over to pick up empty bobbins, whereupon Tom Carpenter, a youth of 15 or 16 years, and a coemployee in the same mill, slipped up behind him as he was in a stooped position, and, placing the nozzle of a rubber hose carrying compressed air at a pressure of 120 pounds to the square inch near the rectum of the plaintiff, pressed the valve on the end of the nozzle, and thus released the compressed air, which entered the rectum with force sufficient to cause plaintiff to drop to the floor in great pain, with his intestines and lower extremities permanently torn, ruptured, and mangled. The said compressed air was generated in defendant's mill, and used by means of a rubber hose and nozzle to clean the machines in the mill.
It appeared in the evidence that the air hose, highly charged with compressed air, was used at certain intervals, but when not in use the hose was allowed to lie upon the floor, and no effort was made to guard or confine it. It was attached to a pipe in the wall, from which it could be readily unscrewed and reattached with ease.
The decision in that case is based upon the well known doctrine of leaving dangerous appliances unguarded and around loose where employees not acquainted with them may be injured. In that case the air hose was attached to the compressed air pipes and all that was necessary to release the air of great power was pressure at the nozzle. No precaution whatever had been taken to secure the proper use of the hose, and it was picked up and used disastrously by two boys. In that case Chief Justice Clark says: "In view of the terrible power of compressed air, and the natural tendency of boysat the age of these to use a *Page 244 
dangerous implement of this kind without taking thought of the damage which might be inflicted, the duty of the employer to give the plaintiff a safe place to work required that the hose should be detached when not in use."
In the case at bar the air hose was disconnected when not in use, and it was disconnected at the time of this occurrence. Walton picked up the air hose and attached it by screwing it to the pipe, and then proceeded to use it in cleaning off himself and the other workmen. Before he picked it up, the air hose was in a place of safety and incapable of injuring any one. Then again, it appears that both Walton and young Rivenbark were familiar with the use of the air hose, and that it was used habitually by the workmen in cleaning their clothes when they "knocked off." This is not a case where a dangerous appliance is left in a dangerous condition and liable to injure some one. In the condition in which the hose was before Walton attached it to the air pipe, it was absolutely harmless. The cause of the boy's death was the wanton and reckless conduct of Walton, who forcibly injected the air into the boy's body. Walton was not acting in the scope of his employment or in the service of the defendant. A case very similar to this, and supporting these views, is Kirby v. R. R. (Ala.), 52 L.R.A. (N.S.), 386; Standard Oil Co. v. Anderson, 212 U.S. 215. The principle is very well expressed in the case of Evers v. Krouse, 66 L. R. S., 592, as follows:
"An act done by a servant while engaged in the work of his master, but entirely disconnected therefrom — done not as a means or for the purpose of performing that work, but solely for the accomplishment of the independent, malicious, or mischievous purpose of the servant — is not in any sense the act of the master, and for the injuries resulting to a third person from such an act the servant alone is responsible."
In Tarppen v. Weston Co., L.R.A., 1918, E. 507, it is held: "Injury by the forcing of compressed air into the body of a workman engaged in the performance of his duties, by fellow-employees who use a hose upon him in a spirit of fun, does not arise out of his employment within the meaning of the Workmen's Compensation Act."
In Franciska Tomkoska v. Pressed Steel Car Co., Workmen's Compensation Board of Pennsylvania, page 1708, in a case of the sportive or malicious use of compressed air, and one very like the case at bar, it is held: "When an employee, engaged in the course of his employment, temporarily suspends his work and engages in play or sport, and while so engaged suffers an injury, he or his dependents are not entitled to compensation for disability or death resulting from such an injury. Such an accidental injury is not `in the course of employment.'"
In cases under the Workmen's Compensation Act, the English courts have uniformly held in the same way. *Page 245 
The following authorities sustain our position: Fitzgerald v. Clark Son (1908), 11 K. B., 796; Barnes v. Colliery Co., Ltd. (1912), A. C.;Herbert v. Foxe Co. (1916), A. C., 405 (this case is also reported Ann. Cases, 1916, D. 578); Labatt (2 ed.), sec. 924-a, note 9; Gurley v. PowerCo., 172 N.C. 690, and cases cited.
The judgment of the Superior Court is
Affirmed.