JOSEPH H. RAESIDE, Appellee, v. CITY OF SIOUX CITY et al., Appellants.

No. 40250.

FEBRUARY 18, 1930.

*H. C. Shull,* for City of Sioux City, appellant.

*Milchrist, Schmidt, Marshall & Jepson,* for D. S..Lewis, appellant.

*Goltz, Schuyler & Brown,* for appellee.

ALBERT, J.—Plaintiff's petition, aside from the formal parts, alleges that the defendant D. S. Lewis is, and was at all times involved herein, the owner of a certain 40-acre tract of land situated in Sioux City, Woodbury County, Iowa; that, prior to June, 1929, the defendant city, a municipal corporation, with the consent and permission of Lewis, constructed a large storm-weather sewer, the outlet of which was in the northwest corner of the aforesaid 40-acre tract, for the purpose of draining storm water from various streets of the defendant City of Sioux City to and upon the aforesaid tract of land. Said storm water was carried from its natural course, causing a small lake or shallow pond of water to form upon said land, and in addition thereto, at the mouth of said storm sewer, the force of the water continuing therefrom caused a pit about 10 feet deep and 10 feet in diameter, which was filled with water to the same level as the water in the aforesaid shallow pond, and connected with the water in said pond by a channel about 5 feet in width. The depth of the water in the shallow pond was about 2 feet until it reached a point about 10 feet from the mouth of the storm sewer, at which point the bottom of said pond dropped abruptly and sharply downward, for a distance of 7 or 8 feet.

The petition further alleges that, on June 19, 1929, various children in the neighborhood of the Lewis land, including the minor son of the plaintiff, were playing in and about said storm sewer and said pond, without objection on the part of the defendants, or either of them, and in the course of play, plaintiff's minor son dropped suddenly into said pit in front of said storm sewer into 10 feet of water, and was drowned; that each of the defendants knew, or were chargeable with knowledge, of the dangerous character of the storm sewer and the body of water, and the attraction of the same to said children, and particularly the dangerous character of the deep pit filled with water in front of the opening of said storm sewer; that their knowledge was superior to the knowledge of plaintiff's minor son; that the dangerous character thereof was hidden and latent, and of such

character that the plaintiff's minor son, of tender years, could not know or appreciate; that the same constituted an attraction to children of the age of plaintiff's minor son, and no precautions were taken by either of the defendants to warn the public generally, and particularly the minor son of plaintiff, of the dangerous character of the same; that said storm sewer and pond of water were so situated in a pasture, without any immediate inclosure. The petition further alleged that the plaintiff's son was about eight years of age, and alleged his probable earning capacity, funeral expenses, etc.; and judgment is asked in the sum of $5,600.

Each defendant filed a demurrer. Each raised the question of the sufficiency of the statement of the cause of action, and in addition, the municipality raised the question that the acts charged against the defendant were done while the city was acting in a governmental capacity; hence the petition shows on its face that there is no liability.

We take it from the arguments made in the case that there would be no liability on the part of either of the defendants unless the facts alleged bring the plaintiff's cause of action within the "attractive-nuisance" doctrine. We are, therefore, confronted with this troublesome question.

The last time this court had occasion to pass upon this question was in the case of *McKiddy v. Des Moines Elec. Co.*, 202 Iowa 225, in which an electric light pole, carrying high-voltage wires, was situated in the immediate vicinity of a city park. The tract of ground on which the poles were situated and the city park were inclosed, with no line of demarcation between. Children frequented the park in question, and played on the tract of ground belonging to the appellant where said poles were located. Those who frequented the park passed across the electric company's land to the river, which was adjacent thereto. The pole referred to, bearing high-voltage wires, had spikes or handholds driven into it, and the plaintiff's intestate climbed this pole, and while sitting on the cross-arm at the top of the pole, received an electric shock from the charged wires, which caused his death. Among other things, we there said:

"Ever since the *Edgington* case [116 Iowa 410], this court has recognized the 'attractive-nuisance' doctrine. Of neces-

sity, it has allowed or denied application of the doctrine as the particular facts of each case would justify and require."

. Later in the case we said: "No hard and fast rule of liability or nonliability can be fixed in this regard."

Our prior decisions touching these questions are cited in the *McKiddy* case, and need not be further cited here.

While the allegations of this petition are insufficient to show a cause of action in case the doctrine of "attractive nuisance" were to apply, we will accept them as sufficient to raise the question, and dispose of it accordingly.

In the case of *Blough v. Chicago G. W. R. Co.,* 189 Iowa 1256, we had before us a very similar set of circumstances. In that case there was no fence or guard around the pond, and the children habitually played thereabout. (This latter statement is not alleged in the case at bar.) We there said:

"It may be conceded that the pond was attractive to children. So are all bodies of water. The trouble with the case is that there was nothing about this pond to render it more attractive or to enhance. the danger over the attractions or dangers of natural bodies or streams of water, such lakes, ponds, and streams being scattered over the country nearly everywhere. * * * In the absence of anything indicating something done by the landowner, calculated to render the pond attractive to children,—something more than of water in its natural state, or more alluring to danger than ordinarily attends playing in its vicinity,—the doctrine of the turntable cases has never been, and ought not to be, applied. * * * As the pond was not other than a mere barrow pit, common wherever railroads have been constructed, without characteristics different from natural collections of water in small ponds, and without additional attraction or enhancement of danger, the court rightly denied recovery."

We are unable to distinguish the fact situation in the case before us from that in the case from which we have just quoted, and we know of no reason why the rule there applied should not apply to the case at bar. It seems to be quite the universal rule, as shown by the following line of cases: *Massingham v. Illinois Cent. R. Co.,* 189 Iowa 1288; *Tavis v. City of Kansas City,* 89 Kan. 547 (132 Pac. 185); *Harper v. City of Topeka,* 92 Kan. 11

(139 Pac. 1018); *Dobbins v. Missouri, K. & T. R. Co.*, 91 Tex. 60 (41 S. W. 62, 38 L. R. A. 573); *Savannah, F. & W. R. Co. v. Beavers*, 113 Ga. 398 (39 S. E. 82, 54 L. R. A. 314); *Sullivan v. Huidekoper*, 27 App. D. C. 154 (5 L. R. A. [N. S.] 263); *Thompson v. Illinois Cent. R. Co.*, 105 Miss. 636 (63 So. 185, 47 L. R. A. [N. S.] 1101); *Arnold v. City of St. Louis*, 152 Mo. 173 (53 S. W. 900, 48 L. R. A. 291); *City of Omaha v. Bowman*, 52 Neb. 293 (72 N. W. 316, 40 L. R. A. 531); *Moran v. Pullman Palace Car Co.*, 134 Mo. 641 (36 S. W. 659, 33 L. R. A. 755); *Schauf's Adm. v. City of Paducah*, 106 Ky. 228 (50 S. W. 42); *Ansell v. Philadelphia*, 276 Pa. St. 370 (120 Atl. 277); *Bottum's Admr. v. Hawks*, 84 Vt. 370 (79 Atl. 858); *Troglia v. Butte Superior Min. Co.*, 270 Fed. 75; *Riggle v. Lens*, 71 Ore. 125 (142 Pac. 346); *Nutting v. City of St. Paul*, 73 Minn. 371 (76 N. W. 61); *Gurley v. Southern Power Co.*, 172 N. C. 690 (90 S. E. 943); *City of Rome v. Cheney*, 114 Ga. 194 (39 S. E. 933); *Emond v. Kimberly-Clark Co.*, 159 Wis. 83 (149 N. W. 760); *Stendal v. Boyd*, 67 Minn. 279 (69 N. W. 899); same case on second appeal, 73 Minn. 53 (75 N. W. 735); *Charlebois v. Gogebec & M. R. R. Co.*, 91 Mich. 59 (51 N. W. 812); *Athey v. Tennessee Coal, Iron & R. Co.*, 191 Ala. 646 (68 So. 154); *Klix v. Nieman*, 68 Wis. 271 (32 N. W. 223); *Eades v. American Cast-Iron Pipe Co.*, 208 Ala. 556 (94 So. 593); *Richards v. Connell*, 45 Neb. 467 (63 N. W. 915); *Peters v. Bowman*, 115 Cal. 345 (47 Pac. 113; rehearing denied, 47 Pac. 598); *Reardon v. Spring Valley Water Co.*, 68 Cal. App. 13 (228 Pac. 406); *Salladay v. Old Dominion Copper Min. Co.*, 12 Ariz. 124 (100 Pac. 441); *Smith v. McGoldrick Lbr. Co.*, 124 Wash. 363 (214 Pac. 819); 45 Corpus Juris 768, 769, Notes 89-92.

In each of the above-cited cases, the facts, if not identical, are strikingly similar to the facts in the case before us, and each holds that, under such state of facts, the doctrine of "attractive nuisance" does not apply, and there is no liability. Further elaboration is unnecessary, and it is quite evident that the demurrer of each of the defendants should have been sustained.

This disposition of the matter avoids the necessity of passing upon the question of whether or not, in the construction and maintenance of this sewer, the city was acting in a governmental

or ministerial capacity, and we express no opinion thereon:— *Reversed.*

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.